MORTIMER A. HELMS, RESPONDENT, v. JOHNSON V. GOODWILL, APPELLANT.

*Attorney and client — contract between — when sustained.*

An attorney will not be allowed by the court to take any undue advantage of his client, but he may deal with his client openly and fairly, and in such case their agreements will be sustained by the court.

Where a person acts rather in the capacity of a broker than that of an attorney, he is entitled to recover for his services, so rendered, as upon a *quantum meruit*, although the agreement in relation to his compensation is not sustained.

APPEAL from a judgment entered at Special Term, in Cattaraugus county, for the sum of $1,011.36, against the defendant, appellant.

The court found, among other things, as matters of fact: *First.* That in the year 1868, one Albert Helms was in the possession, under a contract of purchase, and was the equitable owner, of about thirty acres of land in the town of Randolph. That Thomas J. Chamberlain, Amos Dow, Alonzo Kent and Charles P. Adams, as executors of the last will and testament of Benjamin Chamberlain, deceased, held the legal title to said land. That said executors, in

that year, brought an action in the Supreme Court of the State of New York, to foreclose said contract of purchase, in which action said Albert Helms was defendant, and also another action in the same court against the said Helms, to recover the value of certain personal property, sold the said Helms by the said Benjamin Chamberlain in his lifetime, as was alleged.

That Johnson V. Goodwill, the defendant herein, was an attorney and counselor of this court; that said Albert Helms retained said defendant and his law partner, Merrill T. Jenkins, to defend each of the said actions brought by said executors, and said defendant and his said law partner appeared in said actions for said Helms, and conducted the defense therein. That afterward, the said Helms and the said executors had an accounting, and agreed upon the amount due upon said contracts of purchase, and other matters between them, finding then due from said Helms to said executors, including costs of proceedings, about the sum of $2,000; and the said executors agreed, upon the payment of the said sum, that they would convey the said thirty acres of land to said Helms. That said land was then of a value greatly exceeding said sum of $2,000.

*Second.* That said Johnson V. Goodwill and the said Albert Helms then entered into a parol agreement as follows : Said Helms should assign to said Goodwill the contract of purchase he held for said lands; that said. Goodwill should procure the money, to pay the said executors the sum agreed to be due to them, from one William M. Brown, and take a deed of said lands from said executors, and should hold the same in trust for said Helms. That said Goodwill should secure said Brown for said money, by his bond and a mortgage upon said lands, payable in one and two years from that date. That said lands should be laid out into village lots, and that said Goodwill should assist said Helms to sell sufficient of said lots to pay off said mortgage, and that the proceeds of said lots sold, should be applied in payment of said bond and mortgage, given to said Brown, and that after selling lots sufficient to pay said mortgage, the rest and remainder of said land should be conveyed by said Goodwill to said Helms, and that for his said services, and for the indorsement of $100 on the note of $250 given, and in consideration that said Goodwill should build such a house as he proposed upon the same, the said Goodwill should have one

and one-half acres of said land, situate in the south-west corner thereof. That at the time of making said agreement, said defendant was the attorney and legal adviser of said Albert Helms, in and about said actions with said executors, and in and about the sale and management of said property.

*Third.* That in pursuance of said parol agreement, said Helms did assign said contract of purchase to said defendant, Goodwill, and said defendant did procure a deed of said lands from said executors, and that said defendant thereupon, and on the 26th day of September, 1868, executed his bond and a mortgage on said lands, except the one and one-half acres in the south-west corner thereof, to said Wm. M. Brown, to secure the sum of $2,500, payable, one-half in one year, and the remainder in two years from that date, and that he received from said Brown that sum for said mortgage. That the defendant paid out of the said $2,500, to the said executors and to others for the benefit of said Helms, $2,300, and he retained of said sum, $200 for his own use and benefit.

*Fourth.* That said defendant went into possession of said one and one-half acres of land in the south-west corner of said thirty acres, and still remains in possession thereof, and that said one and one-half acres of land were of the value of $600; that said defendant built a residence for himself thereon, of the description agreed upon between him and said Helms. That said Helms remained in possession of the remainder of said lands.

*Fifth.* That about the time of the making of the said parol agreement, the said Albert Helms and the said defendant, and his law partner, Merrill T. Jenkins, had an accounting of and concerning the services of said firm of Jenkins & Goodwill, in and about said Helms' business, and in and about said actions with said executors; and upon said accounting the said Jenkins & Goodwill charged said Helms for said services the sum of $250, and thereupon said Helms gave said Jenkins & Goodwill his promissory note for the sum so charged him; and that, at or soon after the time the said Goodwill mortgaged the said lands to said Brown as aforesaid, said Goodwill applied $150, derived from said mortgage, on said note, and that the remaining $100 of said note was paid by said Good-

will on the purchase-price of said one and one-half acres of land, and said note was given up to said Helms.

*Sixth.* That the said defendant did not lay out the said lands into lots; that he did not sell or assist in the sale of any lots therefrom, or pay anything upon said mortgage given to said Brown, and took no further steps to carry out the arrangements contemplated by the parties; but when said mortgage became due, it was foreclosed, and all of said land except said one and one-half acres thereof, occupied by the defendant, and about one acre sold to one Brown, was sold, and the proceeds applied upon said mortgage, and interest thereon. That upon said sale there was a deficiency of $28.18, which said defendant became liable to pay.

*Seventh.* That when the said mortgage given to Brown was foreclosed, said Goodwill attended the sale of the premises made thereunder, and purchased a portion of said premises.

*Eighth.* That before the commencement of this action, the said Albert Helms duly sold, assigned and transferred to the plaintiff herein, all claims, demands and causes of action, legal or equitable, which he had against the defendant herein.

The court found as conclusions of law:

*First.* That the said defendant was liable to pay the plaintiff, as assignee of said Albert Helms, the sum of $200, retained by him from the proceeds of the Brown mortgage, with interest thereon from September 28, 1868, less the amount of said deficiency of $28.18, which with interest from the recovery of the deficiency, deducted from said $200, and interest, and charged the payment thereof upon that part of the thirty acres purchased by the defendant upon the foreclosure of the Brown mortgage.

*Second.* That said defendant was liable to, and should pay the plaintiff, as assignee aforesaid, the value of said one and one-half acres of land, to wit: The sum of $600, with interest thereon from September 28, 1868; and that he should be allowed upon said price, the sum of $100, so applied upon the note of said Albert Helms to Jenkins & Goodwill, as aforesaid, as a payment, September 28, 1868. And the court charged the payment thereof upon the one and one-half acres, and directed that the defendant pay to the plaintiff his costs of this action; and he directed judgment accordingly.

Defendant, at the close of the trial, asked the court to find and

decide, "that defendant was entitled to compensation for his services in signing and executing the bond and mortgage for Helms' benefit, and should be credited in this action therefor." The court refused so to find or decide, and defendant duly excepted thereto.

Defendant also asked the court to find and decide, "that defendant was entitled to compensation for building his house under the agreement with Helms, and that he should be credited in this action for the benefits said Helms received." The court refused so to find or decide, and the defendant duly excepted thereto.

Defendant also requested the court to find and decide, "that defendant was entitled to compensation, and should be credited in this action, for his services in trying to sell lots, whatever such services were reasonably worth;" and the court refused so to find or decide, and the defendant duly excepted thereto.

*F. W. Stevens,* for the appellant, cited, as to effect on agreement, of the relation of attorney and client existing between the parties, *Hunter* v. *Alkins* (3 Mylne & Keen, 113); *Edwards* v. *Meyrick* (2 Hare, 60); *Gibson* v. *Jeyes* (6 Ves., 277); *Nesbit v. Lockman* 34 N. Y., 169); *Brock* v. *Barnes* (40 Barb., 527).

*James G. Johnson,* for the respondent, cited *Howell* v. *Ransom* (11 Paige, 538–543), on question of compensation.

E. DARWIN SMITH, J.:

The decision of the learned judge who tried the cause, upon the whole case, carries out the doctrine that the relations between attorneys and their clients are to be watched by the court with great care and strictness, to see that no undue advantage has been taken by the attorney, or any abuse of confidence or unfairness practiced by him upon his client, in their business transactions. While this is just and proper, there is danger, on the other·hand, that injustice may be done to the attorneys. They have the same rights to trade, deal, bargain and contract, with other men, and they may deal with their clients as with other men, when they do so openly and above board, and without fraud, deceit or any kind of imposition arising from their relations as attorneys, or the confidence reposed in them in that respect.

When Helms applied to the defendant to assist him to borrow money to pay the incumbrance upon his land, so as to enable him to obtain his deed and receive the title therefor, the application was scarcely addressed to him in the line of professional employment.

The defendant was asked to do rather the office of a broker than that of an attorney; and when the defendant, upon the urgent importunities of Helms, and as possibly his only expedient and resort to raise the requisite money for the purpose aforesaid, was finally induced to borrow such money upon his own personal credit, and to incur a legal obligation to repay the same, he did more than belonged to him in his mere relations of attorney to the said Helms, and had a right to stipulate for a fair compensation for the labor and services rendered, and responsibility incurred, in that respect, as much as any other man. This consideration, we think the learned judge at the trial overlooked, in refusing to find, as requested at the close of the trial by the defendant's counsel, " that the defendant was entitled to compensation for his services in signing and executing the bond and mortgage for Helms' benefit, and should be credited in this action therefor;" and also in refusing to find and decide, " that the defendant was entitled to compensation for building his house under the agreement with Helms, and that he should be credited in this action for the benefit said Helms received;" and, in the view of the case taken by the learned judge, and in respect to the theory or ground upon which he put his decision, he erred, we think, also, in refusing to find and decide that the defendant was entitled to be credited in this action, for his services in trying to sell lots, whatever such services were worth.

If the defendant were not entitled to retain and hold the lot upon which he had erected his house, as and for his stipulated compensation for the services rendered in negotiating the loans of the money to save said lot of land for Helms, — including the giving of his personal obligation to secure the payment of such money, and his services in selling and deeding the lots, and assistance and advice and services rendered in the management of said property, then he was entitled to be paid for such services, as upon *quantum meruit*, as much as any broker, agent or other employe rendering such services. As these considerations, we think, were

obviously overlooked, or not duly considered upon the requests, as above stated, and, in the decision of said cause, we think that error occurred on the trial for which judgment should be reversed, and a new trial granted.

Present — SMITH, P. J., TALCOTT and GILBERT, JJ.

Judgment reversed, and new trial granted